UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLIAM PORTER                      :
                                    :
            Plaintiff,          .   :
                                    :
      v.                            :
                                    :
KATHLEEN G. SEBELIUS,               :   Civil Action No. 11-1546 (GK)
Secretary of the United            :
States Department of Health        :
and Human Services,                :
                                    :
            Defendant.             :
                                    :

## MEMORANDUM OPINION

Pro se plaintiff William Porter ("Plaintiff" or "Porter")
brings this action against Kathleen Sebelius in her official
capacity as Secretary of the Department of Health and Human
Services ("Defendant," "Employer" or "Secretary").[1] Plaintiff
alleges racial discrimination, hostile working environment,
failure to grant reasonable accommodations, and retaliation in
violation of Title VII of the Civil Rights Act of 1964 ("Title
VII"), 42 U.S.C. § 2000e et seq.; discrimination, failure to
provide reasonable accommodation, and hostile work environment in
violation of the Federal Rehabilitation Act of 1973
("Rehabilitation Act"), 29 U.S.C. § 701 et seq.; and failure to

---

[1] Mr. Porter completed law school but has not worked as an attorney.

provide a reasonable accommodation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.[2]

This matter is presently before the Court on Plaintiff's Motion for Summary Judgment filed on June 17, 2014 ("Pl.'s Mot.") [Dkt. No. 95], and Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment ("Def.'s Mot.") [Dkt. No. 99] filed on August 28, 28, 2014.

Upon consideration of the Motions, Oppositions, and Replies, the entire record herein, and for the reasons stated below, Plaintiff's Motion is **denied**, and Defendant's Motion is **granted in part and denied in part**.

## I.   BACKGROUND

### A. Factual Background

Porter, an African-American male who states that he suffers from a generalized anxiety disorder, worked as a Program Analyst in the Administration and Finance branch ("A&F") of the Office of Finance, Program, and Analysis in the Office of the Assistant Secretary of Preparedness and Response ("ASPR"). Second Am. Compl. ("Compl.") ¶¶ 7, 18 [Dkt. No. 63].

---

[2] Mr. Porter's Complaint is less than clear about which claims are violated under which statute.

Porter began his employment at the Department of Health and Human Services ("HHS") in the ASPR in 2007. Def.'s Ex. 1, Porter Dep. at 14 ("Porter Dep.") [Dkt. No. 95]. When the events in question occurred, Porter was working as a GS-14 Program Analyst at the A&F branch of the ASPR. Def.'s Statement of Material Facts (August 28, 2014) at 1 [Dkt. No. 99-4]. His work involved billings for disaster relief provided by the Federal Emergency Management Agency ("FEMA"). Porter Dep. at 17.

David Dolinsky, Deputy Director of Administration and Finance of ASPR, became Porter's immediate supervisor in August 2009. Id. at 30. Jay Petillo, Director of the Office of Financial Planning and Analysis, was Plaintiff's second level supervisor. Def.'s Ex. 3, Petillo Aff. (March 8, 2012) ¶ 5 ("2012 Petillo Aff.) [Dkt. No. 93-3].

Initially, Plaintiff's working relationship with Dolinsky was "fine." Porter Dep. at 32. In fact, in early 2010 Dolinsky approved a promotion for Porter and gave him an "exceptional" evaluation for 2009. Def.'s Ex. 4, Petillo Aff. (Oct. 27, 2010) ¶ 14 ("2010 Petillo Aff.") [Dkt. No. 99-3]; Def.'s Ex. 5, Dolinsky Aff. (July 21, 2010) ¶ 11-12 ("2010 Dolinsky Aff.") [Dkt. No. 99-3].

However, Dolinsky gave Porter an "unacceptable" rating on his quarterly evaluation for the first quarter of 2010. Dolinsky Aff.

-3-

¶ 13. Dolinsky stated that the review was justified because, although he had tried,

> to mentor and guide Mr. Porter in areas such as interagency payment and collection, Mr. Porter has recently indicated that he will not change the way he does things in spite of my pointing out serious problems. * * * Although I have tried countless times to show Mr. Porter the correct way to do things, he shakes his head and continues to do things the way he wants to.

Id. ¶ 14. See also, Def.'s Ex. 16, Dolinsky Email to Petillo (April 27, 2010) ("April 21, 2010 Petillo Email") [Dkt. No. 99-3].

By April 15, 2010, the relationship between Porter and Dolinsky had soured badly. Porter was offended when Dolinsky expressed his opinion that Louis Farrakhan is an anti-Semite and stated that he did not like Jesse Jackson because "he is known to have cheated on his wife and various other things." 2010 Dolinsky Aff. ¶ 21. The following day, Porter initiated the process of filing an Equal Employment Opportunity ("EEO") Complaint. Pl.'s Ex. 7, Porter Email (April 16, 2010) ("April 16, 2010 Porter Email") [Dkt. No. 99-3]. On May 24, 2010, Porter officially filed an EEO Complaint against Dolinsky. Def.'s Ex. 7, EEO Complaint ("EEO Complaint") [Dkt. No. 99-3].

In a series of emails, Porter complained that he was being harassed by Dolinksy forcing him to remain in his office at all times,

-4-

by not being assigned any work, and by the way Dolinsky treated him. See e.g., Def.'s Ex. 6, Porter Email to Petillo (April 23, 2010) ("April 23, 2010 Porter Email") [Dkt. No. 99-3]; Def.'s Ex. 8, Porter Email to Dolinsky (May 11, 2010) ("May 11, 2010 Porter Email") [Dkt. No. 99-3]; Def.'s Ex. 9, Porter Email to Dolinsky (May 13, 2010) ("May 13, 2010 Porter Email") [Dkt. No. 99-3]. Porter stated that the alleged harassment was causing him to have panic attacks. Id.

As a result, Porter asked to be reassigned and relocated to another building in order to avoid contact with Dolinsky, and to be supervised by Petillo instead of Dolinsky. April 23, 2010 Porter Email. HHS denied this request after determining that Plaintiff was not entitled to a reasonable accommodation since his condition was not a disability under the Rehabilitation Act or the ADA. Def.'s Ex. 14, HHS Mem. (Aug. 6, 2010) ("2010 HHS Mem.") [Dkt. No. 99-3]. Petillo denied a similar, informal request from Porter, stating that he did not think a transfer was in the best interest of the agency and, therefore, could not approve the transfer. Def.'s Ex. 17, Petillo Email to Porter (April 26, 2010) ("April 26, 2010 Petillo Email") [Dkt. No. 99-3].

## B. Procedural Background

On May 24, 2010, Plaintiff filed an EEO complaint with the EEO section of the Department of Health and Human Services. EEO Complaint. He subsequently filed six amended complaints, the last on December

22, 2010. EEO Complaint Final Decision (June 3, 2011) at 2 n.1 [Dkt. No. 13-1]. On June 3, 2011, the agency issued its Final Decision rejecting Plaintiff's claim. Id.

On August 26, 2011, Porter filed a Complaint [Dkt. No. 1] in this Court seeking review of the June 2011 Final Decision. On May 23, 2013, Plaintiff filed a Second Amended Complaint, which is now the operative Complaint in this action. Compl.

On June 17, 2014, Plaintiff filed his Motion for Summary Judgment. On August 28, 2014, Defendant filed her Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment. On September 29, 2014, Plaintiff filed an Opposition to Defendant's Cross-Motion for Summary Judgment and Reply in Support for his Motion for Summary Judgment ("Pl.'s Opp. and Reply") [Dkt. No. 101]. On October 27, 2014, Defendant filed her Reply in Support of her Motion for Summary Judgment ("Def.'s Reply") [Dkt. No. 106]. The Motions are now ripe for review.

## II.   STANDARD OF REVIEW

Summary judgment may be granted only if the pleadings, the discovery materials, and affidavits on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Arrington v. United States, 473 F.3d 329, 333 (D.C. Cir. 2006). "A dispute over a material fact is 'genuine' if 'the evidence is such

that a reasonable jury could return a verdict for the non-moving party.'" Arrington, 473 F.3d at 333 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" if it might affect the outcome of the case under the substantive governing law. Liberty Lobby, 477 U.S. at 248. In reviewing the evidence on a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Johnson v. Perez, No. 15-5034, 2016 WL 2941965, at *2 (D.C. Cir. May 20, 2016).

The burden is on the moving party to demonstrate the absence of any genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When a moving party successfully does so, the nonmoving party must show the existence of a genuine issue of material fact by providing "specific facts showing that there is a genuine issue for trial," and "may not rely on mere allegations or denials to prevail." Alexis v. District of Columbia, 44 F. Supp. 2d 331, 337 (D.D.C. 1999). The moving party is entitled to summary judgment when the nonmoving party fails to offer evidence sufficient to establish an essential element of a claim on which it will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

## III. DISCUSSION

### A. Title VII Claims

#### 1. Legal Framework

Plaintiff's claims of discrimination and retaliation under Title VII are subject to the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Wheeler v. Georgetown Univ. Hosp., 812 F.3d 1109, 1113-14 (D.C. Cir. 2016). That framework requires Plaintiff to first establish a prima facie case of racial discrimination or retaliation under Title VII. Wheeler, 812 F.3d at 1113-14.[3]

To establish a prima facie case of racial discrimination under Title VII, the plaintiff must prove that 1) he suffered an adverse employment action, 2) because of his race. Gladden v. Solis, 926 F. Supp. 2d 147, 150 (D.D.C. 2013), aff'd sub nom. Gladden v. Perez, No. 13-5125, 2013 WL 6222904 (D.C. Cir. Nov. 19, 2013). To establish a prima facie case of retaliation under Title VII, Plaintiff must show that he 1) suffered a materially adverse action, 2) because he had brought or threatened to bring a discrimination claim. Baloch v. Kempthorne, 550 F.3d 1191, 1198 (D.C. Cir. 2008).

---

[3] While the Plaintiff sometimes seems to refer to "failure to obtain a reasonable accommodation" as a separate claim, the term is clearly included in his claim of retaliation.

After a plaintiff establishes a prima facie case, the burden shifts to the employer to provide a nondiscriminatory reason for its actions. McDonnell Douglas Corp., 411 U.S. at 802. If the employer provides a legitimate, nondiscriminatory reason for its action, the burden then shifts back to the plaintiff to show that the employer's stated reason was merely a pretext for discrimination. Id.

In Brady v. Office of Sergeant at Arms, 520 F.3d 490, 495 (D.C. Cir. 2008), our Court of Appeals also held that "[i]n a Title VII disparate-treatment suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not-and should not-decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas." Id., at 494. Instead, the Court must resolve one central question: "[h]as the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race. . ." Id.

### 2. Plaintiff's Motion

Plaintiff seeks summary judgment on his claims of race-based discrimination under Title VII (Claim 1), retaliation under Title VII (Claim 3), failure to provide reasonable accommodation under Title VII, the Rehabilitation Act, and the ADA (Claim 5). He claims to have suffered a decrease in his level of responsibility, as well as a lower bonus and lower performance rating than he had achieved in the past, and disparate racial treatment with regard to reassignments and in retaliation for his EEO Complaint. Pl.'s Mot. at 14-17; Pl.'s Reply at 18-26. Porter also claims that Dolinsky threatened to fire him because he filed the EEO Complaint (Claim 3) and hostile environment under Claim 4. Pl.'s Mot. at 34-37.

In response, Defendant provides a number of non-discriminatory and non-retaliatory reasons for these alleged adverse actions. Defendant argues that Porter's responsibilities decreased only because he refused to carry out his professional responsibilities, and admitted that he was "not mentally able to do anymore work. . ." Def.'s Mot. at 15-16.; Def.'s Ex. 20, Porter Email (June 30, 2010) ("June 30, 2010  Porter Email") [Dkt. No. 99-3]. Defendant also points out that Porter could have continued to perform what he described as "self-generated" work if he had

not let his password to the billing system expire. Def.'s Mot. at
17; Porter Dep. at 45:1-11; 2010 Dolinsky Aff. ¶ 14. Dolinsky
explained that it is up to employees to maintain access to the
agency's billing system, but Porter failed to do so. Id.

As to Porter's decrease in his bonus and performance ratings,
Defendant argues that they were due to poor performance, including
using erroneous billing practices and refusing to correct those
errors when Dolinsky brought them to his attention. Def.'s Mot. at
16; Def.'s Reply Ex. 1, Dolinsky Decl. (April 7, 2014) ¶¶ 6-8
("2014 Dolinsky Decl.") [Dkt. No. 106].

Porter also cited the fact that he was denied a transfer out
of the building when a Caucasian employee was allowed to transfer.
Defendant replies that the Caucasian employee's transfer was not
race-based because, according to Dolinsky's testimony, that
employee preferred to perform work that Dolinksy could not provide
her in ASPR. Def.'s Reply Ex. 3, Dolinsky Dep. Tr. at 138:7-11
("Dolinsky Dep.") [Dkt. No. 106]. Porter did not provide any
evidence to contradict this testimony.

Finally, Defendant explains that Dolinksy did not threaten to
fire Porter because he filed the EEO suit, as Plaintiff alleges.
Rather, the EEO Complaint caused Dolinsky to review Porter's
position description and realized that Porter did not have the

security clearance required for that position. Pl.'s Ex. 19,
Dolinsky Aff. (August 1, 2011) ¶ 21 ("2011 Dolinksy Aff.") [Dkt.
No. 95]. When Dolinksy told Porter to obtain the necessary security
clearance, Porter refused. Id. Dolinsky denied that he was
threatening to fire Porter if he pursued the EEO Complaint, but
rather was pointing out that the EEO Complaint would disclose
Porter's lack of the requisite security clearance for his position.
Id.

Plaintiff responds that Defendant's non-discriminatory and
non-retaliatory reasons are merely pretextual. However, most of
his responses are simply conclusory allegations rather than
specific provable facts. For example, he argues that the emails
upon which Defendant relies could be "read in a different light."
Pl.'s Opp. and Reply at 6.

Porter also points out that Defendant has not produced any
documentation to substantiate her claims about Plaintiff's
erroneous billing practices. Id. at 4-5. Defendant explained that
upon learning that Porter was preparing a bill incorrectly,
Dolinsky prevented him from completing the bill. Dolinksy Aff. ¶¶
6-7 (April 14, 2014) ("2014 Dolinsky Aff.") [Dkt. No. 84-1].
Porter argues that Dolinsky "did not keep copies of those incorrect
documents because [he] prevented them from going forward and

-12-

keeping incorrectly prepared billing documents around could have resulted in their being inadvertently submitted at a later date." Id. ¶ 8. While the lack of documentation may be a relevant consideration for a trier of fact, it does not, on its own, support the entry of summary judgment where there is other admissible evidence in support of the Defendant's position. See Sharma v. District of Columbia, 65 F. Supp. 3d 108, 117 (D.D.C. 2014).

Even though Plaintiff has presented "sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race. . . .," Brady, 520 F.3d at 494, his Motion for Summary Judgment on his claim of discrimination must be **denied**, given that both parties have provided inconsistent evidence on material issues of fact.

Thus, the conflicting testimony of Porter and Dolinsky on the issue of race-based discrimination and retaliation precludes summary judgment on that claim.

### 3. Defendant's Motion

Defendant argues that summary judgment should be granted in her favor because Porter has not presented evidence that

Defendant's non-discriminatory reasons for the alleged adverse employment actions were pretextual.

However, as already mentioned, Plaintiff has pointed to the following evidence from which a jury could find that Defendant discriminated and/or retaliated against him.

First, it is undisputed that a number of Caucasian employees were transferred to other departments, while Porter's request was denied. See, Pl.'s Opp. and Reply at 18-26; Def.'s Reply at 6-7. Defendant asserts, without citing any evidence, that the situations of two of those employees were different than Porter's.

However, one such employee, Brian Sparry, did request a transfer for reasons similar to Porter's. In a letter to Petillo, Sparry wrote that, "your style of micro-management is adversely affecting my health, causing more than an inordinate amount of stress. . . I am therefore requesting accommodation due to my medical condition be[ing] adversely affected by you and to be transferred out of RPE." Pl.'s Opp. and Reply Ex. 68, Sparry Email (June 25, 2009) ("2009 Sparry Email") [Dkt. No. 101]. This evidence showing that the Defendant granted Sparry's transfer request but did not grant Porter's similar request supports Plaintiff's assertion that Defendant's reasons for the disparate treatment of Porter are pretextual.

Second, it is also undisputed that one employee, Linda Reeder, made some of the same billing mistakes that Porter made. Pl.'s Mot. at 14-17; Pl.'s Opp. and Reply at 25-26; Def.'s Reply at 7. Defendant asserts that Reeder was more receptive to Dolinsky's corrections than Porter, but does not cite any evidence in support of that assertion. Def.'s Reply at 7. Mere allegations, without specific facts to support them, are not enough to refute Plaintiff's claims of disparate treatment and discrimination. Alexis v. District of Columbia, 44 F. Supp. 2d 331, 337 (D.D.C. 1999). In fact, Reeder stated that Dolinksy never trained her in proper billing practices, nor admonished her for improper practices. Pl.'s Opp. and Reply Ex. 2, Reeder Aff. (January 27, 2012) ¶¶ 7, 9, 11 ("Reeder Aff.") [Dkt. No. 101].

Third, Plaintiff asserts that many of the emails on which both parties rely can be interpreted differently by the two parties. See, e.g., Pl.'s Opp. and Reply at 6. For example, Porter claims that the email in which he stated that he was "not mentally able to do anymore work. . .," (June 30, 2010 Porter Email), was "a misunderstanding." Pl.'s Opp. and Reply at 6. He also states that he never intended that email to be construed as a statement that he would no longer process disaster relief bills. Id.

Taken in the light most favorable to Porter, the Court agrees that a fact finder could, on the basis of these emails, find a discriminatory or retaliatory intent. As material factual disputes remain over whether Defendant's reasons for any alleged adverse actions were pretextual, Defendant's Motion for Summary Judgment shall be denied with respect to Plaintiff's Title VII claims.

**B. Rehabilitation Act Claims**

Plaintiff has brought claims of discrimination (Claim II), failure to provide reasonable accommodation (Claim V), and hostile work environment (Claims IV and VI) under the Rehabilitation Act.

**1. Legal Framework**

Plaintiff's Rehabilitation Act claims are also subject to the burden shifting framework set forth in McDonnell Douglas. See Woodruff v. Peters, 482 F. 3d 521, 528-29 (D.C. Cir. 2007). As already noted under McDonnell Douglas, a plaintiff has the initial burden of proving a prima facie case for each claim.  McGill v. Munoz, 203 F.3d 843, 845 n.2 (D.C. Cir. 2000). If a plaintiff succeeds in proving a prima facie case, the burden shifts to the defendant to provide a nondiscriminatory reason for its actions. See id. If the employer provides such a reason, the plaintiff must then have an opportunity to prove by a preponderance of the

evidence that the reason offered was, in fact, a pretext for discrimination. Id.

Although the Brady modification to the McDonnell Douglas burden shifting framework applies in Rehabilitation Act cases, it only applies if a defendant answers a plaintiff's claims by providing a nondiscriminatory reason for its actions. See Woodruff v. Peters, 482 F.3d 521, 528-29 (D.C. Cir. 2007). Here, the Defendant attacked Plaintiff's claims under the Rehabilitation Act by arguing that Plaintiff had not satisfied a prerequisite to all claims brought under that Act -- namely, that the Plaintiff must be "disabled" within the meaning of the statute. Def.'s Mot. at 29-32.

### 2. Plaintiff Is Not "Disabled" Within the Meaning of the Rehabilitation Act

"To sustain a disability claim under the Rehabilitation Act, a plaintiff must as a threshold matter establish that he or she has a disability". Klute v. Shinseki, 840 F. Supp. 2d 209, 215 (D.D.C. 2012). Plaintiff's Rehabilitation Act claims fail because the undisputed facts show that Plaintiff was not "disabled" within the meaning of the Rehabilitation Act, and therefore not entitled to its protections. See Id.

The standards used to determine whether a person is disabled under the Rehabilitation Act are identical to the standards applied

under the ADA. 29 U.S.C. §§ 705(9)(B), 794(d). Under those standards, a person is "disabled" if he or she has "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1). The statute defines "major life activities" to include working. 42 U.S.C. § 12102(2)(A).

Although the definition of "disability" "shall be construed in favor of broad coverage of individuals" under the Rehabilitation Act, 42 U.S.C. § 12102 (4)(A), impairments that are developed or exacerbated because of a particular supervisor or work environment do not constitute a disability under the Act. Klute, 840 F. Supp. at 215-17; see Haynes v. Williams, 392 F.3d 478, 482-83 (D.C. Cir. 2004) ("if the symptoms of an impairment are brought on by a single workplace, such an impairment is not substantially limiting"). In particular, an impairment that can be alleviated by changing supervisors does not constitute a "disability" under the Act. See Rand v. Geithner, 609 F. Supp. 2d 97, 103-04 (D.D.C. 2009) (dismissing Rehabilitation Act claims of plaintiff who alleged that supervisors' micromanagement and harassment inhibited her ability to work because the "evidence on which she [had] relie[d] show[ed], at most, that to the extent her impairment interfere[d] with her ability to work, it only limit[ed] her ability to work in

-18-

her particular office environment"); <u>Stroman v. Blue Cross and Blue Shield Assoc.</u>, 966 F. Supp. 9, 11 (D.D.C. 1997) (noting that the plaintiff's "alleged inability to perform a particular job or work for a particular supervisor will not, without more, qualify her as disabled").

In <u>Klute</u>, the court found that the plaintiff suffered from adjustment disorder, anxiety and depression, along with a number of physical infirmities. <u>Klute</u>, 840 F. Supp. at 212-13. The plaintiff argued that he was therefore substantially limited in his ability to work. <u>Id.</u> However, both the plaintiff and his doctor admitted that the plaintiff could be successful at his job if he was given a different supervisor. <u>Id.</u> at 217. The court found that mental impairments that could be rectified by a change in supervisors did not qualify as "disabilities" within the meaning of the Rehabilitation Act. <u>Id.</u> at 217-18

Here too, the undisputed facts show that Porter's impairments do not qualify as "disabilities" within the meaning of the Rehabilitation Act because he admits that they would be alleviated by a change in supervisor and/or office. <u>See</u> April, 23, 2010 Petillo Email; Def.'s Ex. 26, Answers for Reasonable Accommodation Request ¶ 5b (November 5, 2010) ("2010 Answers for Reasonable Accommodation Request") [Dkt. No. 99-3].

Plaintiff claims that he is disabled because he suffers from panic attacks, a generalized anxiety disorder, depression and post-traumatic stress disorder. Pl.'s Mot. at 18-20. Plaintiff has shown, and Defendant does not dispute, that these conditions predated April 2010 when Porter received his "unacceptable" rating on his performance review. See Pl.'s Ex. 39, Wang, M.D. Letter (Sept. 9, 2010) [Dkt. No. 95]; Porter Dep. at 107:7-23; Def.'s Reply at 12.

Thus, by Plaintiff's own admission, these impairments did not limit his ability to work before April 2010. Porter Dep. at 193:5-8 ("Q. So before April of 2010, none of these conditions prevented you from doing your job successful? A. At work? No. No."). Porter's "impairments" have only inhibited him from working for one supervisor, Dolinsky. A doctor's evaluation upon which both Plaintiff and Defendant rely states that, "[a]ccording to Mr. Porter his symptoms at work are specific to his supervisor." 2010 Answers for Reasonable Accommodation Request ¶5.

Furthermore, Porter's requests for accommodation were simply to relocate to another building away from Dolinsky and to work for a different supervisor. See e.g. April 23, 2010 Porter Email. An impairment such as Porter's that only limited his ability to work for and near a certain supervisor is not, as a matter of law, a

-20-

"disability" under the Rehabilitation Act. See e.g., Haynes, 392 F.3d at 482-83.

Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's claims of discrimination (Claim II), failure to provide reasonable accommodation (Claim V), and hostile work environment harassment (Claims IV and VI) under the Rehabilitation Act are **granted**.

## C. Failure to Provide Reasonable Accommodation under the ADA

It is not entirely clear whether Plaintiff asserts his claim of failure to provide reasonable accommodation under the Rehabilitation Act or under the ADA. See Pl.'s Mot. at 21-30. To the extent that Plaintiff asserts this claim under the ADA, it fails for the same reason that his Rehabilitation Act claims fail- i.e. he was not "disabled" within the meaning of the ADA.

To establish a reasonable accommodation cause of action under the ADA, a plaintiff must show that: 1) he was disabled within the meaning of the ADA; 2) his employer was aware of his disability; 3) he could have done his job with reasonable accommodation; and 4) he was denied such accommodations. See McNair v. District of Columbia, 11 F. Supp. 3d 10, 14 (D.D.C. 2014).

The standards used to determine whether a person is disabled under the Rehabilitation Act are identical to the standards applied

-21-

under the ADA. See 29 U.S.C. §§ 705(9)(B), 794(d). Therefore, if a person is not "disabled" under the Rehabilitation Act he cannot be "disabled" under the ADA. See id. Since the undisputed facts show that Porter was not disabled within the meaning of the Rehabilitation Act, for the reasons already articulated in Section III.B.2, he cannot be considered "disabled" under the ADA.

Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's claims of failure to provide reasonable accommodation (Claim V) under the ADA are **granted**.

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **denied** in its entirety, and Defendant's Motion is **granted in part and denied in part**. Claims II, IV, V and VI **shall be dismissed with prejudice.**[4] An Order shall accompany this Memorandum Opinion.

June 14, 2016

_Gladys Kessler_
Gladys Kessler
United States District Judge

---

[4] Plaintiff is strongly urged to retain a qualified attorney, should this case proceed to trial.

-22-